AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.3:26-mj-00040 |
| Jahangeer Ali | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____June 2025 to January 2026____ in the county of ____Klamath County____ in the _____ District of ____Oregon____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Section 1347 | Health Care Fraud |

This criminal complaint is based on these facts:

See attached Affidavit in Support of a Criminal Complaint and Arrest Warrant

☑ Continued on the attached sheet.

/s/ Scott Schneckenburger
*Complainant's signature*

Scott Schneckenburger, Special Agent, HHS-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 9:53 am  a.m./p.m.

Date: ____02/27/2026____

*Youlee Yim You*
*Judge's signature*

City and state: ____Portland, Oregon____

Hon. Youlee Yim You, U.S. Magistrate Judge
*Printed name and title*

3:26-mj-00040

DISTRICT OF OREGON, ss:          AFFIDAVIT OF SCOTT SCHNECKENBURGER

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Scott Schneckenburger, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.      I am a Special Agent with the U.S. Department of Health and Human Services, Office of Inspector General ("HHS-OIG"). I have been employed as a Special Agent with HHS-OIG since 2008. As a Special Agent with HHS-OIG, my current duties include, in part, investigating allegations of health care fraud affecting public health care benefit programs such as Medicare and Medicaid. I have participated in a variety of such investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, participated in the execution of arrest and search warrants, and reviewed various forms of evidence including Medicare and Medicaid claims data, medical records, and business records. Through my training, education, and experience, I have become familiar with white-collar fraud schemes, including schemes involving public health care benefit programs.

2.      I submit this affidavit in support of a criminal complaint and arrest warrant for Jahangeer Ali ("ALI") for Health Care Fraud in violation of 18 U.S.C. § 1347. As set forth below, there is probable cause to believe, and I do believe, that ALI committed Health Care Fraud in violation of 18 U.S.C. § 1347.

**Applicable Law**

3.      18 U.S.C. § 1347 criminalizes a scheme or plan (1) to defraud any health care benefit program or (2) to obtain, by means of material false or fraudulent pretenses or representations, any money or property owned by or under the control of a health care benefit

**Affidavit of Scott Schneckenburger**                                **Page 1**

program, in connection with the delivery of and payment for health care benefits, items, and services, where the defendant acted with the intent to defraud.

## Statement of Probable Cause

4.      I have developed probable cause to believe that ALI, the owner of Oregon Clinical Laboratory LLC ("Oregon Clinical Laboratory"), participated in a scheme to fraudulently bill Medicare Advantage insurance plans for laboratory testing services that were never furnished, in violation of 18 U.S.C. § 1347.

5.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. Because this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact that I, or others, have learned during the course of this investigation. When the statements of others are set forth in this affidavit, they are set forth in substance and in part.

## Subjects of the Investigation

6.      ***OREGON CLINICAL LABORATORY LLC***.  According to Oregon Secretary of State records, Oregon Clinical Laboratory is a domestic limited liability company that was formed in October 2024.  Additionally, Oregon Secretary of State records show the company's primary place of business is located at 417 N Spring St, Unit B, Klamath Falls, OR 97601. A December 2024 onsite survey of Oregon Clinical Laboratory at the above address, that was completed at the request of a Medicare Administrative Contractor ("MAC"),[1] found signage

---

[1] MACs are multi-state, regional contractors responsible for administering both Medicare Part A and Medicare Part B claims. MACs perform many activities, including enrolling providers, processing Medicare Fee-for-Service claims, and handling provider reimbursement.

**Affidavit of Scott Schneckenburger**                                                              **Page 2**

reading "Oregon Clinical Lab" on the business's door.

7.      Medicare records show that Oregon Clinical Laboratory first applied to enroll in the Medicare program in November 2024 to bill for Part B services.

8.      *JAHANGEER ALI.* An Oregon Clinical Laboratory filing with the Oregon Secretary of State, filed on June 20, 2025, identified ALI as "MEMBER" and an "INDIVIDUAL WITH DIRECT KNOWLEDGE" of the company. Additionally, according to a filing with the Oregon Secretary of State, filed on December 15, 2025, ALI is a manager and member of Oregon Clinical Laboratory.

9.      Medicare records reflect that ALI is the current owner of Oregon Clinical Laboratory, and that his ownership became effective in July 2025 *(see excerpts below)*. Medicare records reflect as of July 1, 2025, ALI is the only owner of Oregon Clinical Laboratory.[2]

| Section 6: OWNERSHIP INTEREST & MANAGING CONTROL INFO (INDIVIDUALS) | |
| --- | --- |
| | **UPDATED** |
| **INDIVIDUAL:** Ali, Jahangeer | **ADDED** |
| **Identifying Information** | |
| **Name:** Jahangeer Ali | **Date of Birth:** ▮/1991 |
| **Title:** Owner | **Country of Birth:** Pakistan<br>**State of Birth:** Sindh |

| Role | Effective Date |
| --- | --- |
| 5% OR GREATER DIRECT/INDIRECT OWNER | 07/01/2025 |
| AUTHORIZED OFFICIAL | 07/01/2025 |
| MANAGING EMPLOYEE | 07/01/2025 |

10.      Information obtained by the investigation reflects that ALI is from Pakistan and he came to the United States on a student visa.  ALI subsequently applied for asylum.  ALI's temporary presence is authorized in the United States while he awaits an asylum decision.

11.      Information provided by U.S. Customs and Border Protection indicated that ALI

---

[2]Investigation into the IP addresses that submitted this information to Medicare is ongoing.

**Affidavit of Scott Schneckenburger**                                                                **Page 3**

planned to depart from Los Angeles International Airport on February 26, 2026, on an international flight to Istanbul, Turkey. Investigators did not see a return ticket to the United States.

Medicare

12.    Based on my training and experience and knowledge of this investigation, I learned the following about the Medicare program. The Medicare program was established under Title XVIII of the Social Security Act. Medicare is a federally funded health plan which provides health care coverage to the nation's elderly and certain disabled individuals. The program is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the U.S. Department of Health and Human Services. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries." Medicare is a health care benefit program as defined by 18 U.S.C. § 24(b).

13.    Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). The Medicare Advantage program, also known as Medicare Part C, is a private plan alternative to traditional Medicare. CMS contracts with private Medicare Advantage organizations that provide health care coverage to Medicare beneficiaries. In traditional Medicare fee-for-service, Medicare pays claims for health care services directly to health care providers. In contrast, under Medicare Advantage, CMS pays Medicare Advantage organizations a fixed monthly payment per beneficiary to provide health coverage, including coverage for laboratory testing, no matter how many services are provided or how much those services cost.

14.    By becoming a participating provider in Medicare, enrolled providers, like Oregon Clinical Laboratory LLC, agree to abide by the policies and procedures, rules, and

**Affidavit of Scott Schneckenburger**                                                            **Page 4**

regulations governing reimbursement.  To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, are required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers are provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

15.     According to the Medicare Program Integrity Manual, the most frequent kind of fraud arises from a false statement or misrepresentation made, or caused to be made, that is material to entitlement or payment under the Medicare program.  The Medicare Program Integrity Manual also identifies specific examples of fraud, including but not limited to, billing for services not furnished and/or supplies not provided.

Oregon Clinical Laboratory's Billing to Medicare Advantage

16.     Medicare claims data reflect that Oregon Clinical Laboratory billed Cigna Medicare Advantage plans for more than $26.2 million for laboratory testing services, for which those plans paid over $15 million.[3]  These claims were received by Cigna from June 2025 to January 2026 and the dates of service range from December 2024 to December 2025.

17.     Medicare claims data reflect that Oregon Clinical Laboratory billed Aetna Medicare Advantage plans more than $20.6 million for laboratory testing services, for which those plans paid over $13 million.  These claims were received by Aetna from November 2025 to January 2026 and the dates of service range from January 2025 to December 2025.

---

[3]These Cigna Medicare Advantage claims data were provided by the Health Care Service Corporation ("HCSC"). Cigna's Medicare Advantage business is owned and operated by HCSC. In 2025, HCSC announced that it had completed the acquisition of The Cigna Group Medicare Advantage, Medicare Supplemental Benefits, and Medicare Part D businesses.

**Affidavit of Scott Schneckenburger**                                              **Page 5**

18. The investigation has not yet obtained all claims data from each Medicare Advantage insurance plan that has been billed by Oregon Clinical Laboratory.

Medicare Beneficiary Interviews

19. In February 2026, law enforcement interviewed multiple Medicare beneficiaries for which Oregon Clinical Laboratory billed testing claims to Medicare Advantage insurance plans. These beneficiaries reported to law enforcement that they were not familiar with Oregon Clinical Laboratory and did not receive testing from Oregon Clinical Laboratory. To date, law enforcement has not interviewed a single beneficiary as part of this investigation who reported in fact receiving laboratory services that were billed by Oregon Clinical Laboratory. The following table summarizes several testing claims Oregon Clinical Laboratory billed to Medicare Advantage insurance plans for the beneficiaries interviewed by law enforcement. All of the beneficiaries below reside outside of the state of Oregon.

| Beneficiary | Medicare Advantage Organization Billed | Date of Service on Claim | Date Claim Received | Amount Billed | Amount Paid |
|---|---|---|---|---|---|
| A.B. | Cigna | 1/6/2025 | 11/27/2025 | $3,400 | $1,954.51 |
| C.V. | Cigna | 1/9/2025 | 11/27/2025 | $3,400 | $1,954.51 |
| J.H. | Cigna | 1/22/2025 | 11/29/2025 | $3,400 | $1,770.48 |
| M.Z. | Cigna | 2/5/2025 | 12/6/2025 | $3,400 | $1,954.51 |
| K.F. | Cigna | 2/11/2025 | 12/8/2025 | $3,400 | $2,080.32 |
| K.S. | Aetna | 1/23/2025 | 1/16/2026 | $1,700 | $367.50 |

"Referring" Provider Interview

20. Medicare claims data reflect that Oregon Clinical Laboratory billed more than $122,000 to Cigna Medicare Advantage insurance plans for laboratory testing supposedly referred (ordered) by Adult Witness 1, a physician in Tennessee ("AW1"), for which the plans paid over $108,000. These claims were received by Cigna from approximately November to

**Affidavit of Scott Schneckenburger**                    **Page 6**

December 2025 and the dates of service range from December 2024 to October 2025.

21.    In February 2026, law enforcement interviewed AW1, who reported that AW1 had never heard of Oregon Clinical Laboratory and did not order any tests through them.

Financial Records

22.    The investigation has obtained financial records associated with Oregon Clinical Laboratory and ALI.  U.S. Bank records indicate that Cigna made deposits totaling more than $9.5 million into a business checking account in the name of Oregon Clinical Laboratory from December 2025 to January 2026.  ALI is listed as the applicant on this business checking account belonging to Oregon Clinical Laboratory, which was approved in July 2025 (*see excerpt below*). The address listed for ALI on the checking account application matches the address on ALI's identification from the California Department of Motor Vehicles.

| Overall Application Status: | Fulfillment Completed | Primary Applicant: | JAHANGEER ALI |
|---|---|---|---|
| Authentication: | 0009078875326423 08 | Timestamp: | 07/10/2025 16:25:07 |
| AML Score: | | Application Status: | APPROVED |

23.    On February 21, 2025, ALI opened a business banking account with U.S. Bank in the name of Utah Clinical Laboratory LLC.  At the opening of this account, ALI was required to provide identity information which included providing his California driver's license (number ▮▮▮▮▮▮).  On July 10, 2025, ALI opened a subsequent business banking account with U.S. Bank in the name of Oregon Clinical Laboratory LLC (the same account referenced above).  On February 26, 2026, I contacted the U.S. Bank Senior Vice President for Law Enforcement Engagement concerning the opening of the Oregon Clinical Laboratory LLC account.  As to why

**Affidavit of Scott Schneckenburger**                                                            **Page 7**

no driver's license information was collected at this account opening, the Senior Vice President related that there are various factors which U.S. Bank looks to when considering how much identification information to request from customers at account openings.  One factor which limits the amount of identification information requested is the customer holding existing accounts with U.S. Bank.

24.     Bank records indicate that ALI made a $119 deposit, using Zelle, into the Oregon Clinical Laboratory business checking account in July 2025 (*see excerpt below*).

| Jul 22 Zelle Instant On 07/22/25 | PMT From JAHANGEER ALI PMT ID=BACd890ir0wu | 119.00 |
|---|---|---|

25.     The investigation's analysis of financial records related to Oregon Clinical Laboratory and ALI remains ongoing.

Utah Clinical Laboratory Employee Interview

26.     A January 2025 filing with the Utah Secretary of State shows ALI to be associated with Utah Clinical Laboratory LLC, a domestic limited liability company, located in George, Utah.

27.     In August of 2025, law enforcement interviewed Adult Witness 2 ("AW2"), a Utah Clinical Laboratory ("UCL") employee.  AW2 reported that they started working at UCL on July 21, 2025.  AW2 advised that AW2 was a receptionist for UCL.  UCL was not actually processing any tests yet.  They were currently setting up the business and buying equipment, so AW2's only duty was to check the physical mailbox.  AW2 advised that ALI was the owner of UCL.  AW2 stated that ALI's phone number was ▮▮▮▮-9427, which investigators later attributed to ALI, as described *infra*.  ALI told AW2 that he lived in California and planned to visit UCL every couple weeks.  AW2 only met ALI in person one time, when ALI visited UCL

**Affidavit of Scott Schneckenburger**                                                    **Page 8**

on August 4, 2025.  AW2 and ALI stated that they are both from Pakistan, and have friends in common, which is how AW2 got the job at UCL.  AW2 believed ALI probably had other labs, based on previous conversations with ALI, but AW2 never asked ALI specifically about other labs.

28.     AW2 was re-interviewed by law enforcement on February 26, 2026 and shown a photo of ALI from ALI's California Driver's License. AW2 confirmed the individual in the photo to be the person he knows to be ALI (*see image shown to AW2 below*).  Based on my knowledge of this investigation, the image shown to AW2 matches ALI.



Electronic Communications Indicating ALI's Involvement in the Scheme

29.     Bank records obtained by the investigation and the law enforcement interview of AW2 indicate that ALI's phone number is ███████-9427 ("ALI's phone number").  On February 26, 2026, investigators were surveilling ALI while he waited to depart for a flight at Los Angeles International Airport ("LAX").  A law enforcement officer located in another place dialed ALI's phone number.  Investigators watching ALI saw him pick up his phone, look at the screen, and put his phone back in his pocket.

30.     ████████████████████████████████████████

**Affidavit of Scott Schneckenburger**                                                                 **Page 9**



31.





32.

33.

34.



### Conclusion

35.    ALI was arrested by law enforcement at approximately 5:45 PM on February 26, 2026 on probable cause for a violation of 18 U.S.C. § 1347.  ALI was arrested at Los Angeles International Airport prior to boarding his ticketed flight on Turkish Airlines 10 to Istanbul, Turkey.

36.    Based on the foregoing, I have probable cause to believe, and I do believe, that ALI committed Health Care Fraud in violation of 18 U.S.C. § 1347.  I therefore request that the Court issue a criminal complaint and arrest warrant for ALI.

37.    Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney Andrew Ho, and

**Affidavit of Scott Schneckenburger**                                         **Page 12**

AUSA Andrew Ho advised that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Request for Sealing

38.     It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because any disclosure of the information at this time may cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation.   Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Scott Schneckenburger
Special Agent, HHS-OIG


        Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

 9:53 am      a.m./p.m. on February 27, 2026.



_____
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

**Affidavit of Scott Schneckenburger**                                                        **Page 13**