PETER MORRIS (SBN 126195)
peter.morris@btlaw.com
LYRIC D. MENGES (SBN 356378)
lyric.menges@btlaw.com
BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles, CA  90067
Telephone:  (310) 284-3880
Facsimile:  (310) 284-3894

Attorneys for Defendant
JAHANGEER ALI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAHANGEER ALI<br><br>Defendant. | Case No. Case No.3:26-mj-00040<br><br>DEFENDANT MR. ALI'S MOTION TO REVOKE OR AMEND DETENTION ORDER AND FOR RELEASE PENDING TRIAL<br><br>SEALED |

**DEFENDANT MR. ALI'S MOTION TO REVOKE OR AMEND DETENTION ORDER AND FOR RELEASE PENDING TRIAL**

Defendant Mr. Ali, by and through counsel, respectfully moves this Court, pursuant to 18 U.S.C. §§ 3142 and 3145(b), for an order revoking or amending the detention order and releasing him on a secured bond with strict conditions, including electronic monitoring and continued passport surrender. The proposed conditions are more than sufficient to reasonably assure his appearance and the safety of the community. Detention is not warranted.

1

## MEMORANDUM IN SUPPORT

### I.     INTRODUCTION

This case presents precisely the circumstance in which the Bail Reform Act requires release subject to strict conditions rather than continued detention. Mr. Ali does not minimize the seriousness of the allegations. But the relevant inquiry is not whether the allegations are serious; it is whether there exists a set of conditions that will reasonably assure his appearance and community safety. There is.

Mr. Ali has no passport because the FBI already seized it. He is prepared to submit to GPS electronic monitoring, home detention, travel restrictions, reporting to Pretrial Services, and any other condition the Court deems appropriate. Those conditions directly address the only meaningful detention issue likely to be raised here—risk of nonappearance. Courts within the Ninth Circuit repeatedly recognize that passport surrender, travel restrictions, and electronic monitoring materially reduce any realistic risk of flight and can constitute the least restrictive means to assure appearance. *See United States v. Ebonka,* 733 F. Supp. 3d 967, 971 (D. Nev. 2024); *see also United States v. Fanyo-Patchou*, 426 F. Supp. 3d 779, 784-85 (W.D. Wash. 2019).; *United States v. Williams*, No. 212CR463JCMVCF, 2015 WL 9595403, at *3 (D. Nev. Dec. 31, 2015); *United States v. Gardner*, 523 F. Supp. 2d 1025, 1030 (N.D. Cal. 2007).

The facts also show that Mr. Ali is not the architect of this alleged scheme. He is a vulnerable individual from Pakistan who came to the United States on a student visa, lost status after he could no longer afford tuition, applied for refugee status because of ongoing conflict in his home region, and was then recruited and manipulated by others who used his name and Social Security number to set up sham laboratory businesses. When he realized the enterprise was illegitimate and tried to get out, he was threatened and told it would be worse for him if he left. His eventual

conduct was not sophisticated evasion; it was panic. And critically, he is now committed to continuing to cooperate with the FBI. These facts strongly cut against any finding that he presents a serious risk of intentional flight that cannot be managed through conditions.

## II.      LEGAL STANDARD

The Bail Reform Act establishes a strong preference for pretrial release. A defendant must be released on personal recognizance or unsecured bond unless such release will not reasonably assure appearance or will endanger the community. If additional safeguards are necessary, the Court must impose the least restrictive condition or combination of conditions that will reasonably assure appearance and safety. 18 U.S.C. § 3142(c)(1)(B). Pretrial detention is the "carefully crafted limited exception." *United States v. Terrone*, 454 F. Supp. 3d 1009, 1016 (D. Nev. 2020). Courts in this Circuit have further emphasized that doubts regarding release should be resolved in favor of the defendant. *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006).

To justify detention based on risk of flight, the government must prove by a preponderance of the evidence that the defendant presents a serious risk of flight. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). That burden requires concrete, individualized facts, not generalized concern or conclusory assertions. As one district court within the Ninth Circuit recently explained, "serious risk of flight" means a great risk – beyond average – that the defendant will intentionally and actively evade proceedings or supervision. *United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023).

3

## III.    RELEVANT FACTS

Mr. Ali came to the United States from Pakistan on a student visa to attend college. He later lost that student status after financial hardship prevented him from continuing to pay tuition. Because of ongoing conflict in his home state, he applied for refugee status.

During this vulnerable period, a friend from Pakistan drew him into what was represented as a major business opportunity. Mr. Ali was persuaded to provide his name and Social Security number so that purported "lab businesses" could be formed. In reality, according to the current understanding of the facts, those entities were shells. Although the businesses were nominally associated with Oregon and Utah, Mr. Ali remained in California and was not actually operating legitimate laboratories there. Instead, billing activity was being generated by other individuals located in Pakistan and Dubai. From approximately September through February, those entities allegedly billed Medicare for laboratory tests and durable medical equipment and collected approximately $40 million.

As funds entered accounts associated with Mr. Ali, others sent him purported invoices directing where the money should be wired. Mr. Ali himself received approximately $150,000, which remains untouched in a Chase account. He did not dissipate it. He did not flee with it. He did not hide it.

Late last year, Mr. Ali realized the business was illegitimate and attempted to extricate himself. Instead of being able to simply walk away, he was threatened and told that those involved already had all of his identifying information and that things would go worse for him if he tried to leave. Feeling trapped, frightened, and unable to see a lawful path out, Mr. Ali panicked and asked the same friend who had brought him into the scheme to book him a flight

4

home. He was arrested at LAX before boarding. The FBI seized his passport. He is now prepared

to continue cooperating with the FBI and to comply with any condition the Court imposes.

### IV.    ARGUMENT

**A. The government cannot show that Mr. Ali presents a serious risk of flight that cannot be mitigated by conditions.**

The government's burden is not to show some abstract possibility of flight. In nearly every

federal criminal case, some incentive to avoid prosecution exists. The burden is to prove a

serious, individualized, intentional risk of nonappearance that cannot be managed through

conditions. Motamedi and Figueroa-Alvarez require concrete proof of such a risk.

That showing cannot be made here. First, the most obvious mechanism for international

flight – a passport – is unavailable. The FBI has already seized Mr. Ali's passport. Second, he is

willing to submit to GPS electronic monitoring and home detention. Third, he is willing to accept

strict travel restrictions, regular reporting, and any other supervision Pretrial Services

recommends. These conditions sharply constrain movement and create immediate detection and

intervention mechanisms. Courts within the Ninth Circuit repeatedly treat those same conditions

as substantial and effective flight-risk mitigation tools. *Ebonka*, *Fanyo-Patchou*, *Williams*, and

*Gardner* all support release where robust monitoring and travel restrictions are in place.

**B. Passport seizure and electronic monitoring are the least restrictive means to reasonably assure appearance.**

In *Ebonka*, a healthcare fraud case, the court approved pretrial release subject to passport-

related restrictions and later described the travel prohibitions as the least restrictive means to

address risk of flight. 733 F. Supp. 3d 967, 971 (D. Nev. 2024). In *Fanyo-Patchou*, the court

required surrender of all passports and travel documents, barred the defendant from obtaining

new ones, and coupled those conditions with active GPS monitoring, concluding that the package would make it "incredibly difficult" for the defendant to flee. 426 F. Supp. 3d 779, 784-85 (W.D. Wash. 2019). In *Williams*, the court recognized that ankle monitoring serves the primary purpose of ensuring appearance and mitigating flight risk, and held that such monitoring constituted the least restrictive means to assure appearance. No. 212CR463JCMVCF, 2015 WL 9595403, at *3 (D. Nev. Dec. 31, 2015). In *Gardner*, electronic monitoring provided "added insurance" against violations of release conditions.  523 F. Supp. 2d 1025, 1030 (N.D. Cal. 2007).

That reasoning applies with even greater force here, because Mr. Ali's passport has already been seized. This Court need not speculate whether he will surrender it; that step has already occurred. Combined with GPS monitoring and home detention, the practical barriers to flight are substantial.

### C.  Mr. Ali's conduct shows panic and exploitation, not sophisticated evasion.

The government will likely point to the fact that Mr. Ali was arrested at LAX while attempting to board a flight to Pakistan. That fact should not be ignored, but neither should it be viewed in isolation.

The surrounding circumstances matter. Mr. Ali is not alleged to have built a sophisticated escape plan, concealed assets, obtained false travel documents, or secreted funds offshore for himself. He did not convert the alleged proceeds into an inaccessible nest egg and disappear. To the contrary, the roughly $150,000 he personally received remains untouched in a domestic Chase account. His attempt to leave occurred only after he came to understand that the business was fraudulent, tried to get out, and was threatened by the people who had drawn him in. The attempted travel was the act of a frightened, unsophisticated, manipulated participant trying to

flee a coercive situation, not the act of a defendant now likely to outmaneuver federal supervision.

That distinction matters under § 3142. The relevant question is present risk under present conditions. At present, he has no passport, no ability to quietly leave the country, and every incentive to remain, assist counsel, and continue cooperating with the FBI. Once the Court imposes GPS monitoring, home detention, and travel restrictions, the risk profile changes decisively.

### D.  The Section 3142(g) factors favor release.

The charged offense is serious, but it is nonviolent. That matters. There is no allegation that Mr. Ali poses a physical danger to any person or to the community. The case is fundamentally about alleged billing fraud and financial activity, not violence, weapons, narcotics trafficking, or obstruction through force. The weight of the evidence is the least important factor and cannot carry the detention analysis. *Motamedi*, 767 F.2d at 1408.

Mr. Ali's history and characteristics support release. He came to the United States for school, later faced financial hardship and immigration vulnerability, and then became susceptible to manipulation by people who promised a lucrative opportunity and instead used his identity. He appears to have been a nominal front rather than an operational mastermind. He did not consume or hide the funds he personally received. He is willing to comply with stringent release conditions. And he is committed to continuing to cooperate with the FBI. Those facts all weigh heavily in favor of release on conditions.

Finally, there is no basis to find that no condition or combination of conditions will reasonably assure his appearance. To the contrary, the available set of conditions is strong, concrete, and well recognized in Ninth Circuit law.

## V.     PROPOSED CONDITIONS OF RELEASE

Mr. Ali respectfully proposes release on the following conditions:

1. Secured bond in an amount set by the Court.

2. Continued surrender of his passport and any other travel documents, with a prohibition on applying for or obtaining any new passport or travel document without prior Court approval.

3. GPS electronic monitoring.

4. Home detention, or home incarceration if the Court prefers, except for court appearances, meetings with counsel, medical treatment, religious services, employment approved by Pretrial Services, and other activities specifically authorized by Pretrial Services.

5. Travel restricted to the District of Oregon, the Central District of California, or such other geographic limits as the Court and Pretrial Services deem appropriate.

6. Reporting to Pretrial Services as directed.

7. No new lines of credit, transfers above a threshold set by the Court, or access to business accounts except as approved by Pretrial Services.

8. No contact with any unrepresented co-defendant, witness, or participant in the charged conduct except through counsel.

9. Full cooperation with Pretrial Services and continued cooperation with the FBI consistent with advice of counsel.

10. Any other condition the Court deems appropriate.

## VI.     CONCLUSION

The Bail Reform Act does not permit detention simply because the allegations are serious or because the government can imagine some risk of nonappearance. It requires the Court to

determine whether the least restrictive combination of conditions can reasonably assure appearance and safety. Here, they plainly can.

Mr. Ali has no passport because the FBI seized it. He is willing to wear an electronic monitor. He is willing to remain on home detention. He is willing to accept strict travel restrictions and close supervision. He has not concealed the funds he personally received. He is not a danger to the community. And he is committed to continuing to cooperate with federal investigators.

For those reasons, Mr. Ali respectfully requests that the Court revoke or amend the detention order and release him on bond subject to the conditions proposed above, or such other conditions as the Court finds appropriate.

Date: March 13, 2026

**BARNES & THORNBURG LLP**

By: */s/ Lyric D. Menges*
Peter Morris
Lyric D. Menges
Attorneys for Defendant
JAHANGEER ALI

9

## **PROOF OF SERVICE**
### UNITED STATES OF AMERICA V. JAHANGEER ALI
*Case No.* No.3:26-mj-00040

I am over the age of eighteen years and not a party to the above-entitled action. My business address is 2029 Century Park East, Suite 300. On March 16, 2026, I served a copy of the following document(s):

**DEFENDANT MR. ALI'S MOTION TO REVOKE OR AMEND DETENTION ORDER AND FOR RELEASE PENDING TRIAL**

☐ **BY UNITED STATES MAIL.** I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated below and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at San Diego, California.

☐ **BY OVERNIGHT DELIVERY.** I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **BY ELECTRONIC MAIL SERVICE.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Andrew T. Ho,  Esq
US Department of Justice
1000 SW 3rd Avenue, Suite 600
Portland, Oregon 97204
Tel.# 503-727-1054
Email: Andrew.Ho@usdoj.gov

The laws of the State of California that the foregoing is true and correct.

Executed on March 16, 2026 at Los Angeles, California

_____
Alma Martinez

10