SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ANDREW T. HO, OSB #185047**
Andrew.Ho@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:26-mj-00040 |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REVOKE OR AMEND DETENTION ORDER** |
| **JAHANGEER ALI**, | |
| **Defendant.** | **ORAL ARGUMENT REQUESTED** |

Defendant engaged in a long-term health care fraud scheme that resulted in the theft of tens of millions of dollars. Before he learned of this investigation and federal criminal charges, defendant apparently attempted to flee the country to escape the situation he found himself in. Now that he faces the prospect of serious federal felonies, he has an even greater incentive to flee.

Defendant has not established that he has any connections to the community and he poses a clear risk of flight. There are no combination of conditions that would both reasonably assure his appearance for future proceedings in this district and the safety of the community. This

**Government's Response to Motion to Revoke or Amend Detention Order         Page 1**

Court should deny defendant's motion to revoke or amend his detention order and continue to detain him.

## I.        FACTUAL BACKGROUND

Defendant engaged in a long-term health care fraud scheme to submit fraudulent billings to Medicare Advantage plans and receive and transfer the ill-gotten funds. As part of the scheme, defendant owned and operated a company in Klamath Falls, Oregon that purported to be a clinical laboratory providing testing services. From June 2025 to January 2026, approximately $46 million in fraudulent claims from the Oregon clinical laboratory were submitted to Medicare Advantage plans. However, no providers had actually ordered testing services from the company and none of the Medicare Advantage beneficiaries on the claims had actually received testing services from the company. As a result of the scheme, Medicare Advantage plans paid out over $28 million on the fraudulent claims. Defendant also set up bank accounts for the Oregon company and for another clinical lab company based in Utah through which millions of Medicare Advantage plan dollars flowed through. The majority of the funds remain unaccounted for and the full scope of the scheme is still under investigation.

Defendant's participation in the scheme spans several months. Since last summer, for both of the Oregon and Utah companies, defendant communicated with individuals who were paid to sit in the nearly empty storefronts of the Oregon and Utah companies or check the mail. He coordinated the payment of rent for the Oregon clinical lab storefront. Last summer, defendant also exchanged text messages with a confidential human source whose phone was seized as a result of a separate investigation in the Eastern District of Texas into the submission of hundreds of millions of dollars in false claims submitted to Medicare and other health benefit programs.

**Government's Response to Motion to Revoke or Amend Detention Order          Page 2**

On Thursday, February 26, 2026, defendant was scheduled to take a flight from Los Angeles International Airport to Turkey with an ultimate destination of Karachi, Pakistan. Before he could board his flight, defendant was arrested on probable cause for Health Care Fraud in violation of 18 U.S.C. § 1347. At the time of his arrest, defendant had $8,500 in U.S. currency in his possession and three luggage bags of clothes.

## II.    PROCEDURAL POSTURE

On February 27, 2026, U.S. Magistrate Judge Youlee Yim You issued a criminal complaint for Health Care Fraud in violation of 18 U.S.C. § 1347 and defendant made his initial appearance in the Central District of California.

On March 4, 2026, the District Court for the Central District of California held defendant's detention hearing. U.S. Magistrate Judge Michael B. Kaufman ordered defendant detained pending his appearance in the District of Oregon.

## III.    LEGAL STANDARD

Review of a magistrate judge's release order is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court, however, "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id.* at 1193. Rather, the Court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

The Bail Reform Act provides that a defendant shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing risk of flight by a mere preponderance of the

**Government's Response to Motion to Revoke or Amend Detention Order          Page 3**

evidence. *See United States v. Aitkin*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

18 U.S.C. § 3142(g) sets forth the statutory factors to consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defendant may present evidence by proffer or hearsay. *Winsor*, 785 F.2d at 756; *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

**IV. NO CONDITIONS CAN REASONABLY ASSURE DEFENDANT'S APPEARANCE AS REQUIRED AND PROTECT THE COMMUNITY FROM THE DANGER POSED BY DEFENDANT'S RELEASE.**

This Court cannot fashion any combination of conditions that would reasonably assure defendant's appearance at future proceedings and protect the community. Defendant's history and characteristics and the nature of defendant's offense provide defendant both with the means and the incentive to flee. No condition can effectively mitigate defendant's serious risk of flight. Further, defendant's conduct in a scheme to bill tens of millions of dollars to Medicare Advantage plans for services not provided or even requested poses a continued risk of danger to the community.

**Government's Response to Motion to Revoke or Amend Detention Order** **Page 4**

### a.  The Nature and Circumstances of the Offense

Within a single year, defendant engaged in a health care fraud scheme that led to the theft of tens of millions of dollars.  The scale of defendant's fraud is significant as is the calculated and deliberate manner in which it was conducted.  The scheme involved setting up sham companies in multiple states, the opening of bank accounts, registering the sham companies to receive Medicare Advantage funds, and the use of actual provider and beneficiary identities to submit numerous fraudulent claims.

Additionally, the factor of the nature and circumstances of the offense charged looks not only at the specific acts and charges, but also the potential penalty if the person is convicted. *See, e.g.,* U*nited States v. Townsend,* 897 F.2d 989, 995 (9th Cir. 1990) (noting defendants faced penalties of 35 and 70 years if convicted).  A conviction of health care fraud carries a maximum sentence of 10 years' imprisonment.  18 U.S.C. § 1347.  Further, as a starting point, defendant may face an offense level of 29 under the guidelines.  *See* USSG § 2B1.1(a)(1) (seven-level base offense for wire fraud, (b)(1)(L) (22-level enhancement for theft of more than $25 million).  Assuming a criminal history category of I, defendant's sentencing exposure is 87-108 months.  This is before any other potential sentencing increases such as the sophisticated means offense characteristic or other federal charges such as aggravated identity theft or money laundering.  Both the nature of defendant's scheme along with the significant sentence he faces support defendant's continued detention.

### b.  The Weight of the Evidence

In the Ninth Circuit, the weight of the evidence is the least important factor.  *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008).  However, this factor still militates against defendant's release.  Defendant coordinated the operation of the Oregon and Utah clinical labs

**Government's Response to Motion to Revoke or Amend Detention Order          Page 5**

by communicating with individuals he asked to sit in the mostly empty storefronts and check the mail. These individuals communicated with defendant through text messages and emails. Much of the fraudulently obtained money from the clinical laboratories flowed through bank accounts that defendant set up. As even defendant recognizes in his motion, the enterprise was illegitimate.

### c. The History and Characteristics of the Defendant

The history and characteristics of defendant weigh in favor of defendant's detention. Defendant arrived in the United States on a student visa. He subsequently sought asylum from Pakistan. Despite that, defendant attempted to flee to the very place from which he sought asylum until he was stopped by law enforcement. At the time of his arrest, defendant had $8,500 in U.S. currency on his person and was traveling with three large suitcases. Defendant has not established that he has any solid ties to the community that would provide him with a reason to stay.

In his motion, defendant represents that he has $150,000 untouched in a bank account. However, the ultimate destination of most of the fraudulently obtained funds remains unknown as this investigation continues. Defendant's history and characteristics weigh in favor of his continued detention.

### d. Danger to the Community

Courts in the Ninth Circuit have held that, "danger to the community may encompass pecuniary or economic harm." *United States v. Possino*, 2013 WL 1415108, at *7 (C.D. Cal. Apr. 8, 2013) (citing *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992)); *see also United States v. Cohen*, 2010 WL 5387757, at *9 (N.D. Cal. Dec. 20, 2010) ("Financial harm can

**Government's Response to Motion to Revoke or Amend Detention Order**          **Page 6**

constitute community danger, where there is a showing that defendant's fraudulent activity is ongoing or defendant has a propensity to continue fraudulent activity.").

Within a year, Medicare Advantage plans paid out tens of millions of dollars in fraudulently obtained funds. This health care fraud scheme occurred largely on paper and required careful planning. If defendant is released, there is little to stop defendant from engaging in further fraudulent conduct or using his knowledge to help others from engaging in the same scheme. Additionally, the harm extends beyond the loss of funds from Medicare Advantage plans and defendant's release would pose a risk of danger to individuals in the community. The fact that Medicare Advantage plans have already paid for non-existent genetic testing on behalf of beneficiaries means that those plans may be less likely to cover future, actual genetic testing for those beneficiaries. The risk of danger to the community weighs in favor of continued detention.

### e. No Conditions Will Ensure Defendant's Appearance

No conditions proposed by defendant will ensure his appearance. In his motion, defendant states that once he realized the business was illegitimate, he attempted to find a way to remove himself from the scheme. The threats of others involved in the scheme apparently led defendant to attempt a panicked return to Pakistan.

However, defendant's conduct shows that his release poses a clear risk of flight. He attempted to flee the United States before he had the added incentive of fleeing to avoid federal charges. Further, defendant attempted to return to Pakistan, the country from which he claimed asylum and one of the countries from which he now claims the fraudulent billing originated. If

**Government's Response to Motion to Revoke or Amend Detention Order**          **Page 7**

defendant is released, he has every incentive to flee to avoid both the threat of others involved in the scheme and federal prosecution.

## V.  CONCLUSION

Given the risk that defendant will flee, the government respectfully requests that the Court deny defendant's motion.

Dated: March 18, 2026.                                    Respectfully submitted,

                                                         SCOTT E. BRADFORD
                                                         United States Attorney

                                                         /s/ *Andrew T. Ho*
                                                         ANDREW T. HO, OSB #185047
                                                         Assistant United States Attorney